In the United States District Court
for the
Western District of Texas

| United States of America | § | |
| --- | --- | --- |
| | § | SA-12-CR-860-XR |
| v. | § | SA-12-CR-944-XR |
| | § | |
| Arnoldo Louis Lopez | § | |

ORDER

On this day came on to be considered Defendant's Objections to the Presentence Investigation Report.

**Background**

On October 17, 2012, Arnoldo Louis Lopez was charged in an indictment with allegedly violating 21 U.S.C. §§ 841, et seq. Specifically, it was alleged in count one that the Defendant possessed with the intent to distribute cocaine base.[1] Count two alleged that the Defendant used firearms during and in relation to the drug trafficking crimes. Count three alleged that the Defendant conspired with others to possess with the intent to distribute cocaine base. Count four alleged that the Defendant was a convicted felon in possession of a firearm.

On November 28, 2012, in a separate proceeding, Lopez was charged in a superseding indictment with allegedly violating 18 U.S.C. §§ 371 and 924(a)(1)(A). Specifically it was alleged in count one that from July 16, 2012 and September 2, 2012, the Defendant conspired with others to make false

---

[1] SA-12-CR-944, docket no. 18.

1

statements during the purchase of firearms.[2]  In counts six, seven, nine, sixteen and seventeen it was alleged that the Defendant aided and abetted other persons to knowingly make false statements.

On August 15, 2013, plea agreements were filed in both cases.  Pursuant to the agreement in 12-CR-944, the Defendant pled guilty to count one (possession with the intent to distribute 28 grams or more of cocaine base) and count two (possession of firearms during and in relation to the drug trafficking crimes).  In the Factual Basis for Plea, the Defendant admitted that during a search of an apartment located at 6840 Pecan Valley, San Antonio, Texas[3] an aggregate amount of 240.8 grams of crack cocaine (base) and 46.5 grams of powder cocaine were found by police officers.   The Defendant admitted that he was possessing over 28 grams of cocaine base with the intent to distribute.  He also admitted that he was in possession of various firearms in furtherance of his drug trafficking activities.[4]

Pursuant to the agreement in 12-CR-860, the Defendant agreed to plead guilty to counts one, six, seven, nine, sixteen and seventeen of the superseding indictment.[5]   In the Factual Basis for Plea, the Defendant admitted to using others to procure at least 19 different firearms (AR-15 rifles, other 5.56 caliber rifles, 7.62 caliber rifles and AK-47s).  The Defendant also admitted in the plea agreement that he is a convicted felon and legally prohibited from purchasing these firearms.

On September 5, 2013, the Court accepted the Defendant's pleas after admonishing the Defendant as to his rights.  On February 6, 2014, a revised Presentence Investigation Report (PSIR) was prepared by a probation officer.[6]  The report stated that on August 7, 2012, the U.S. Border Patrol stopped a vehicle that had 46 rifles hidden inside an auxiliary gas tank.  A later investigation revealed that the Defendant and others were involved in a scheme to use straw purchasers and then transfer the

---

[2] SA-12-CR-860, docket no. 68.
[3] The PSIR indicates that this was an apartment occupied by Yolanda Hernandez and Michael Gutierrez, co-defendants in SA-12-CR-944.
[4] SA-12-CR-944, docket no. 68.
[5] SA-12-CR-860, docket no. 162.
[6] SA-12-CR-944, docket no. 137.

weapons to another individual to smuggle the weapons into Mexico for use by the Los Zetas drug cartel. The PSIR also detailed the October 4, 2012 apartment search.

The PSIR also states that at some unspecified date, the Defendant and other conspirators were robbed of their narcotics by three males.  The PSIR states that on April 1, 2012, in retaliation for the robbery, Lopez, Oscar Delgado and William Vidal, shot and killed Anthony Guevara, Jr. and Arturo Belamonte Pagan.  The PSIR also states that the murder weapon was an AK-47 assault rifle, one of the weapons trafficked to Mexico as part of the weapon conspiracy.

**Objections to the PSIR**

The Defendant has lodged various objections to the PSIR.  They are as follows:

12-CR-860

| | | |
|---|---|---|
| Para. 37 | | +6 enhancement for 46 firearms per USSG §2K2.1(b)(1)(C)[7] |
| Para. 38 | | +4 enhancement for firearm trafficking per §2K2.1(b)(5) |
| Para. 39 | | +4 enhancement for transferring firearms with intent to transport them to Mexico per §2K2.1(b)(6)(A) |
| | | Alternatively, +4 enhancement for using or possessing a firearm in connection with the distribution of narcotics per §2K2.1(b)(6)(B) |

12-CR-944

| | | |
|---|---|---|
| Para. 46 | | base offense level of 28 (based upon 25.528 grams of heroin, 44.668 grams of cocaine and 173.842 grams of cocaine base) |
| Para. 47 | | +2 enhancement for obstruction per §2D1.1(b)(14)(D) |
| Para. 25 & 48 | | cross reference to first degree murder which calculates the base offense level at 43 per §2D1.1(d)(1) |

---

[7] (1) If the offense involved three or more firearms, increase as follows:
   Number of Firearms      Increase in Level
   (A) 3-7                 add 2
   (B) 8-24                add 4
   (C) 25-99               add 6

3

|   |   |
|---|---|
| Para. 30, 31 & 51 | +2 enhancement for obstruction of justice (submitting a false affidavit to a judge) per §3C1.1[8] |
| Para. 50 | +4 enhancement for leadership role in the offense per §3B1.1(a) |
| Para. 59 | denial of acceptance of responsibility (based upon the submission of the false affidavit) per §3E1.1 and 3C1.1 |

The Defendant further argues that the criminal history computation of IV over-represents his true criminal history. Prior to any rulings on the objections, the sentencing guidelines for a criminal history category IV and offense level of 43 recommend life imprisonment. However, because the statutory authorized maximum sentence is less than the minimum of the applicable guideline range, the guideline range in SA-12-CR-860 is 60 months (5 years for each count (counts 1, 6, 7, 9, 16 and 17)). The guideline range in SA-12-CR-944 (count one) is 480 months. In 12-CR-944 (count two), the guideline range is 5 years (to run consecutive). Defendant argues that prior to application of any 3553(a) factors, his advisory guideline calculations should be Criminal History IV, net offense level 23, which recommends a guideline range of 70 to 87 months and consecutive sentence of 5 years in 12-CR-944 (count two) for a total sentence of 130 months.

**Sentencing Hearings**

On June 11 and July 9, 2014, the Court held sentencing hearings. During the first hearing the Government produced a number of witnesses in support of its argument that the Defendant's objections should be overruled.

With regard to the denial of acceptance of responsibility and enhancement for obstruction of justice, the Government tendered an affidavit[9] signed by the Defendant wherein he claimed that he

---

[8] "If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels."

[9] Government's Exhibit 11 to the June 11, 2014 hearing. The affidavit was filed in SA -12-CR-944 by Mr. Gutierrez on November 18, 2013. See docket no. 119.

alone was responsible for all the drugs found at the 6840 Pecan Valley apartment. The Defendant signed this affidavit with the intent it be submitted in the case filed against Michael Gutierrez. The Government argues that the affidavit was patently false.

With regard to the cross reference for murder, a San Antonio Police Detective testified Defendant Lopez, William Vidal, Rodolfo "Rudy" Villarreal and Oscar Delgado[10] were at an apartment (location not identified) when several individuals came to purchase marijuana.[11] A co-defendant in the drug conspiracy testified that this apartment was occupied by Oscar Delgado, and that apartment was used for Delgado (not Lopez's) drug distribution activities.[12] One or more of the individuals robbed the occupants of the drugs and shot Mr. Villarreal in the face. The drug conspiracy co-defendant and a co-defendant in the weapon conspiracy testified that on the evening of March 31, 2012, they were at the Defendant's apartment when Lopez received a telephone call. Lopez was told in the call that some "dudes" were at a party at another apartment. Lopez then called Oscar Delgado and told him they found the individuals that shot Rudy. One of the co-defendants testified that once "O" arrived to Lopez's apartment, "O" and Lopez talked about "murking" or murdering these individuals and they took an AK-47 from Lopez's apartment. On April 1, 2012, the detective testified that Defendant Lopez, Delgado, and Vidal drove to a location where they thought the individuals responsible for the drug theft and shooting of Rudy could be located. Defendant Lopez was identified as the driver of the vehicle. Once they thought they identified the individuals, Delgado or Vidal "sprayed" the vehicle occupied by the individuals suspected of committing the theft and shooting.[13] Anthony Guevara, Jr. and Arturo

---

[10] Oscar Delgado is not named as a co-defendant in either the drug or weapon conspiracy cases.
[11] One of the Government's witnesses, a co-defendant in the drug conspiracy case, testified that Defendant Lopez was not present in the apartment when the drug theft and shooting took place.
[12] The testimony on this point is rather confusing. The co-defendant also testified that most of the individuals identified in this case purchased drugs from each other and were members of the conspiracy.
[13] The co-defendant in the drug conspiracy testified that after the "spraying" Defendant Lopez and Delgado told him about the spraying and the co-defendant was under the impression from those statements that all three (Lopez, Vidal and Delgado) were "shooters." The co-defendant in the weapon conspiracy testified that Defendant Lopez, "O" and a third individual talked about the incident, firing an AK-47 and hiding the weapon. He also

Belamonte Pagan were killed in the "spraying." A later investigation revealed that neither Guevara nor Pagan were involved in the drug theft or shooting of Villarreal. The weapon used in the spraying was an AK-47. Approximately 23 shell casings were recovered from the murder scene. On February 25, 2014, Defendant Lopez was indicted for murder in Bexar County, Texas.

With regard to the weapon trafficking and transport to Mexico enhancements, the Government called to the witness stand one of Lopez's co-defendants in the drug conspiracy case (SA-12-CR-944). This individual testified at the sentencing hearing that he was also involved in acquiring firearms. He testified that on occasions he would pay cash to Lopez for firearms and sometimes he provided marijuana to Lopez for firearms. He testified that he obtained 30 to 40 weapons from Lopez and then he would ship them to Mexico. He testified that Lopez was not otherwise involved in shipping the weapons to Mexico. Nevertheless, the witness testified that Lopez knew that the weapons were being shipped to Mexico for use by the Los Zetas cartel.

## Analysis and Rulings

**Number of Firearms**

The Defendant appears to argue that he may only be held responsible for procuring 19 different firearms. The Government argues that he is responsible for at least 46 weapons. In this case a co-defendant testified that he obtained 30 to 40 weapons from Lopez. The Court finds that Lopez was responsible for procuring at least 30 weapons and accordingly the +6 enhancement is proper. Defendant's objection is overruled.

**Firearm Trafficking**

"Subsection (b)(5) calls for a four-level enhancement if the defendant engaged in the trafficking of firearms. By specifying that the defendant so engage, the Commission has called for application of

---

testified that they all washed their hands in tomato juice (in an apparent attempt to remove any gun residue). This co-defendant was under the impression that Lopez only drove the vehicle, but did not fire any weapon.

this enhancement on the basis of the defendant's own conduct or the conduct of another that the defendant aided, abetted, counseled, commanded, induced, procured, or willfully caused." USSG 2K2.1, cmt. 7.  In this case the Court finds that the Defendant knew or had reason to believe that his involvement in the procurement of these weapons was for the purpose of firearm trafficking.  *See United States v. Juarez*, 626 F.3d 246 (5th Cir. 2010).  Defendant's objection is overruled.

**Transport of Weapons to Mexico**

If a defendant "possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be transported out of the United States" the Guidelines recommend a 4 level enhancement.  *See* 2K2.1(b)(6)(A).  In this case a co-defendant testified that Lopez knew that the weapons were being shipped to Mexico for use by the Los Zetas cartel.  Defendant's objection is overruled.

Alternatively, the 4-level enhancement is proper pursuant to 2K2.1(b)(6)(B)[14].  No objection was made to the enhancement based on this subsection.  Based upon the testimony at the sentencing hearing and Defendant's own plea agreement, it is undisputed that Lopez was in possession of various firearms in furtherance of his drug trafficking activities.

**Base Offense Level of Drugs**

The probation officer calculated the base offense level upon 25.528 grams of heroin, 44.668 grams of cocaine and 173.842 grams of cocaine base.  Because the marijuana equivalent totaled 655.248 kilograms, the base offense level was determined to be 28.  See USSG §2D1.1(c)(6).  The Government argues that the base offense level was correctly calculated because these drugs were actually seized during the October 4, 2012 search of the Pecan Valley apartment.  As stated above, in

---

[14] "If the defendant— …
(B) used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels."

the Factual Basis for Plea, the Defendant admitted that during a search of the Pecan Valley apartment, an aggregate amount of 240.8 grams of crack cocaine (base) and 46.5 grams of powder cocaine were found by police officers.  The Defendant admitted that he was possessing over 28 grams of cocaine base with the intent to distribute.  Accordingly, it appears that the Defendant is contesting responsibility for the 25.528 grams of heroin and the powder cocaine.  However, under USSG § 1B1.3 the heroin and powder cocaine are properly considered as relevant conduct.[15]  The Court finds the Defendant was engaged in jointly undertaken criminal activity and accordingly all the drugs seized are properly considered as relevant conduct.  Defendant's objection is overruled.

**Enhancement for Obstruction per §2D1.1(b)(14)(D)**

Apparently either under the theory that the Defendant was responsible for the alleged threats lodged against his co-defendant, or obstructed the prosecution of Michael Gutierrez with the use of the false affidavit, the probation officer recommended an enhancement.  As stated below, the Government produced no evidence that this Defendant directed that threats be made against the co-defendant.  Otherwise, this enhancement is duplicative of the obstruction of justice enhancement.  Accordingly, the objection to this enhancement is sustained.

**Enhancement for Obstruction per §2D1.1(b)(14)(C) and (E)**

After the Court questioned the probation office as to the duplicative nature of an enhancement under §2D1.1(b)(14)(D), the probation officer deleted that reference and filed a new PSIR just minutes

---

[15] "Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:
(1)
(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
(B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense…."

before the second sentencing hearing, arguing that an enhancement is still appropriate under §2D1.1(b)(14)(C) and (E). Defendant objected to the new proposed enhancements. The Court sustains the objection inasmuch as the Defendant was given late notice and the enhancements remained duplicative.

**Cross Reference to Murder**

Due to the murders of Anthony Guevara, Jr. and Arturo Belamonte Pagan, the probation officer increased the base offense level to 43 applying the cross reference to first degree murder. See USSG §2D1.1(d)(1).[16]

Initially, the Court considers the standard it should apply in connection with the murder cross-reference. It appears that the Fifth Circuit has not squarely addressed the issue. In other circuits a preponderance of the evidence standard is applicable. *See U.S. v. Hamilton*, 550 F. App'x. 291 (6th Cir. 2014); s*ee also U.S. v. Cook*, 550 F. App'x. 265 (6th Cir. 2014) ("jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence."); *U.S. v. Fernandez-Hernandez*, 652 F.3d 56, 72 (1st Cir. 2011); *U.S. v. Mitchell*, 635 F.3d 990 (7th Cir. 2011); *U.S. v. Clay*, 579 F.3d 919 (8th Cir. 2009); *U.S. v. Gibson*, 328 F. App'x. 860 (4th Cir. 2009).

In the Fifth Circuit whether the §2D1.1(d)(1) cross-reference should be applied depends on whether the conduct to which the cross-reference refers is "relevant conduct" pursuant to §1B1.3. *See U.S. v. Valenzuela-Contreras*, 340 F. App'x. 230 (5th Cir. 2009). Valenzuela-Contreras "fronted" marijuana to Pablo Escobar. Escobar then fronted the marijuana to Vernon Harris. Later, Valenzuela traveled to Harris's residence in order to collect part of the $8,000 owed as payment for the marijuana

---

[16] "(1) If a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States, apply § 2A1.1 (First Degree Murder) or § 2A1.2 (Second Degree Murder), as appropriate, if the resulting offense level is greater than that determined under this guideline."

originally fronted to Escobar. "Harris said that he did not have the money and refused to sign over his Ford Expedition as payment. Valenzuela then shot Harris at least three times in the body and head." *Id*. at 231-32. In state court, Valenzuela pled guilty to Harris's murder. *Id*. at 232. Valenzuela argued that the sentencing judge erred because Harris's murder was related to other relevant conduct under § 1B1.3(a)(2) (a marijuana transaction) and not to the offenses of conviction (heroin and cocaine possession). The Fifth Circuit concluded that the district court properly applied the murder cross reference because "the plain language of §1B1.3(a)(3) explicitly recognizes that Harris's murder may be relevant conduct because it is a harm that resulted from relevant conduct under (a)(2). U.S.S.G. § 1B1.3(a)(3) (including as relevant conduct "all harm that resulted from the acts and omissions specified in subsection[ ] ... (a)(2) above, and all harm that was the object of such acts and omissions")." *Id*. at *5.

In *U.S. v. Smith*, 224 F.3d 766 (5th Cir. 2000), the Fifth Circuit stated that in "determining whether or not to apply a cross-reference in a conspiracy case, a district court must take into account "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." *Id*. at *6. The district court found that "Smith, as a participant in a drug conspiracy, could reasonably foresee the murder of rival drug dealers like Curtis." The Fifth Circuit concluded that such "a finding is not clearly erroneous where, as here (1) there is substantial evidence that Smith participated in the kidnaping and delivery of Curtis to Pena, and (2) the kidnapings and murders are listed as activities related to the conspiracy in the indictment." *See also U.S. v. Holloway*, 116 F.3d 1478 (5th Cir. 1997).[17]

In this case the Defendant was at Delgado's apartment when a robbery occurred. Delgado's drugs were stolen. There was no evidence presented to the Court that any of the stolen drugs belonged in any way to the Defendant. Accordingly, there was no evidence to support the statement found in the

---

[17] Defendant also objects to the cross-reference because the murders were not referenced in either the drug conspiracy indictment or the weapon conspiracy indictment.

PSIR that the Defendant's drugs were stolen. There was no evidence presented to the Court that the Defendant was storing any of his drugs at Delgado's apartment.

The Court heard persuasive testimony that the Defendant planned and participated in the murders of Anthony Guevara, Jr. and Arturo Belamonte Pagan. The Court finds from a preponderance of the evidence that the Defendant planned and participated in the murders and that the murders were premeditated. Despite the above, the cross-referenced offense must be relevant conduct attributable to the drug conspiracy or weapon conspiracy in this case under §1B1.3(a). Accordingly, the Court evaluates whether the murders were relevant conduct attributable to the either the weapon or drug conspiracies.

Section 1B1.3 states, in relevant part, as follows:

(a) Chapters Two (Offense Conduct) and Three (Adjustments). Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:

> (1) (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
>
> (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;
>
> ***
>
> (3) all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and
>
> (4) any other information specified in the applicable guideline.

11

The application of the murder cross-reference was analyzed in *U.S. v. Sellers*, 512 F. App'x. 319 (4th Cir. 2013). In that case Sigmund Diaola James was investigated in 2007 regarding possible drug-related activities. In 2008, wiretaps were secured on his phone and he was indicted in September 2008 on drug conspiracy charges. James and his co-conspirators were found guilty by a jury. Over James's objection, the district court adopted the pre-sentence investigation report and applied the cross-reference found in Guidelines § 2D1.1(d)(1) for the 2004 first degree murder of Vance Davis. The Fourth Circuit reversed concluding that the Davis murder could not be considered relevant conduct. The court of appeals held that the evidence was insufficient to conclude that the murder occurred during, in preparation for, or in the course of attempting the drug conspiracy in that case. *Id*. at 331.

In *U.S. v. Gutierrez*, 373 F. App'x. 13 (11th Cir. 2010), however, the Eleventh Circuit found the murder cross-reference applicable even though "Gutierrez did not personally participate in the Escobedo murders, and there was no evidence that he had direct knowledge the murders would occur…." *Id*. at *2. The Government had demonstrated that Gutierrez was a member of the Varela Drug Ring and that organization routinely carried guns to protect against a home invasion, and its operations included taking drugs from others by force. In addition, after the Escobedo murders took place, Gutierrez helped ransack the Escobedo home looking for drugs and money. The Eleventh Circuit concluded that these actions indicated that the possibility that a murder would occur in furtherance of the Varela Drug Ring's activities was something that was both reasonably foreseeable to Gutierrez and within the scope of his participation in the conspiracy.

Similarly in *U.S. v. Keyes*, 284 F. App'x. 105 (4th Cir. 2008), the Fourth Circuit concluded that the murder cross-reference was correctly applied when Keyes informed Gregory Felton, one of his drug conspirators, that Gerald Michie had stolen one of their firearms. Felton killed Michie. The Fourth Circuit held that "Keyes and Felton need not have specifically agreed to kill Michie in order for the

murder cross-reference to apply to Keyes. It was necessary only that the murder was reasonably foreseeable to Keyes."

The Government argues that Defendant's "violations of § 924(c), 554, and the drug violations were all part of the same course of conduct.  By possessing firearms, trading them routinely and often for narcotics, using them to protect himself, co-conspirators, narcotics and proceeds, and to defeat rivals, the defendant demonstrated his willingness to illegally arm himself and use them in the course of the conspiracy. Moreover, the type of firearm and temporal proximity, as well as the defendant's history of firearms offenses, weigh heavily in support of the district court's finding the murder to have occurred in the same course of conduct. Additionally, by discharging the firearms, the defendant exhibited not just his willingness but also his intent to use the firearms for criminal purposes. The defendant's unlawful possession was also connected to his membership in the conspiracy. Nevertheless, even without the defendant's gang affiliation, his willingness to arm himself with AK-47s; his intent to readily use the firearms for illegal purposes when it suited him; the short time span between the instances of possession; and his criminal history, which reflects a propensity to conduct himself in this manner, all demonstrate a course of conduct by the defendant. Finally, the harm flowing from the second instance of unlawful firearm possession-and the murders is properly considered relevant conduct under the analysis set forth in Pauley et al."

Defendant argues that any drug distribution engaged in by Rudy Villarreal[18] or Oscar Delgado was independent of any drug dealing attributable to the Defendant.  The Defendant further notes that he was not robbed of any of his drugs.  Accordingly, while either arguing that he did not participate in the murders, or the Government has failed to prove his guilt, the Defendant argues that the murders did not result as part of the offenses of conviction, namely his drug or weapon conspiracies.

---

[18] Rudy Villarreal is not named as a co-defendant in either the drug or weapon conspiracy cases.

13

In this case the Defendant has admitted he was involved in a drug conspiracy and a weapons conspiracy. Neither Rudy Villarreal nor Oscar Delgado or the other individual allegedly involved in the shooting (William Vidal) have been indicted in these cases and the Government has not established by a preponderance of the evidence that either Villarreal or Delgado were involved in these conspiracies as unindicted conspirators. If the Government had shown by a preponderance of the evidence that Villarreal, Delgado or Vidal were part of either conspiracy in this case the result may have been different. What the Government has demonstrated is that the Defendant was involved with others in a weapon conspiracy and drug conspiracy, that the Defendant knew others involved in their own criminal activity, that one of the drug conspirators jointly supplied drugs to the Defendant and Delgado, and the Defendant for whatever reason decided to join others in murdering two men. The Government has failed to establish per USSG 1B1.3 that the murders occurred during the commission of the offenses of conviction, in preparation for those offenses, or in the course of attempting to avoid detection or responsibility for those offenses. Defendant's objection to the cross-reference is sustained.

**Acceptance of responsibility/Obstruction of justice**

With regard to the denial of acceptance of responsibility and enhancement for obstruction of justice, the Court finds that Defendant's affidavit was patently false and used in an attempt to inappropriately exonerate Mr. Gutierrez. Indeed, the falsity of the affidavit is demonstrated by the fact that Mr. Gutierrez pled guilty to possessing with intent to distribute over 28 grams of cocaine base.[19] Further, the Court finds that the Defendant's conduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) indicates that the Defendant has not accepted responsibility for his criminal conduct. Further, the Court finds that this case is an extraordinary case justifying simultaneous adjustment for obstruction of justice and denial for acceptance of responsibility. The Defendant was under no obligation to implicate other defendants in order to receive acceptance of

---

[19] SA-12-CR-944 , docket no. 86.

responsibility.  The Defendant, however, cannot affirmatively provide a false affidavit in his criminal case in an attempt to inappropriately exonerate co-defendants.  *See United States v. Hopper*, 27 F.3d 378, 383 (9th Cir. 1994).  Defendant's objections are overruled.  The Court does not consider the Government's alternative argument that it believed that Defendant was threatening witnesses via Facebook messages recently discovered.  The Government produced no evidence that the Defendant was responsible for having Manuel Villarreal or Lisa Botello[20] post any allegedly threatening remarks.  In addition, the Government provided no evidence to establish that the Defendant was responsible for a shot being fired in the direction of a witness after the witness came across two members of the "Duffle Bag Mafia" at a convenience store.

**Leadership Role**

During the first sentencing hearing Defendant made a reference to the +4 enhancement for leadership role in the offense per §3B1.1(a)[21].  The PSIR stated that the Defendant recruited co-defendants Jenelius Crew, Libertad Lopez, Michael Allen Cervantes and others to assist in the weapon conspiracy.  PSIR at ¶13.  With regard to the drug conspiracy the PSIR noted that Yolanda Hernandez and Michael Gutierrez acted under the direction of the Defendant.  PSIR at ¶26.  The probation officer considered Lopez a leader and organizer of the drug trafficking organization which included five or more participants.  In addition, the PSIR noted that the Defendant exercised a leadership role in the weapon conspiracy.  PSIR at ¶28.  The Defendant has not objected to any of these paragraphs.  Inasmuch as it is undisputed that the Defendant was an organizer or leader of a criminal activity that involved five or more participants, the enhancement was properly applied.  Defendant's objection is overruled.

---

[20] Lisa is allegedly a close friend of Lopez's and a member of the "Duffle Bag Mafia," a rap group and recording studio used by Lopez.
[21] "Based on the defendant's role in the offense, increase the offense level as follows:
(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels."

**Criminal History**

Defendant's criminal history was scored at IV.  Defendant does not dispute that the history was technically scored correctly.  The total of the criminal history points was 9.  Defendant, however, argues that the criminal history is overstated "as several of those convictions in the state side were all meted out and served concurrently."  Defendant's criminal history consists of the following:

| | |
|---|---|
| Resisting arrest 01/08/06 | pled nolo contendere on 05/30/08 and sentenced to six months |
| Possession of marijuana 05/04/06 | pled nolo contendere on 05/30/08 and sentenced to six months |
| Criminal mischief 06/23/07 | pled nolo contendere on 05/30/08 and sentenced to 18 months (concurrent) |
| Assault 09/26/07 | pled nolo contendere on 05/30/08 and sentenced to six months |

"If reliable information indicates that the defendant's criminal history category substantially over represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted."  USSG § 4A1.3(b)(1).  Although the Defendant was sentenced on the same date for all his previous crimes, the crimes were committed on separate occasions.  The Court finds that the defendant's criminal history category does not substantially over represent the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes.  Defendant's objection is overruled.

**Alleged failure by the Government to disclose the identity of witnesses prior to the sentencing hearing**

Defendant alleges that the Government failed to give any notice prior to the sentencing hearing of the identity of any witnesses it called.  The Defendant specifically objects to the testimony of the two co-defendants.  Other than a generic objection, however, the Defendant fails to identify how specifically

he was prejudiced by this lack of notice.  He does not offer any argument as what contradictory testimony or rebuttal evidence he would have offered, had he been given prior notice.  In any event, Defendant's objection was aimed at witnesses related to the murder cross-reference.  Given the Court sustained the objection to that cross-reference, this objection is moot.  Alternatively, Defendant's objection is overruled.

**Conclusion**

The Court sustains the Defendant's objections in part and overrules the objections in part as stated above and during the July 9 hearing.  The Government's verbal objection made during the July 9 hearing seeking to increase the total offense level based on an additional quantity of drugs is overruled inasmuch as that objection was not timely.  As a result of the rulings described above, Defendant's criminal history is IV, and the offense level is 40.

SIGNED this 9th day of July, 2014.

XAVIER RODRIGUEZ

UNITED STATES DISTRICT JUDGE